WILLIAM A. FERGUSON, Appellant, *v.* FLORENCE NETTER, as Executrix of CHARLES S. NETTER, Deceased, Respondent.

Sale — duty of vendee to reject merchandise promptly if found to be unmerchantable — when such rejection is insufficient.

1. An express warranty survives acceptance, but an implied warranty does not. It is, therefore, the duty of a vendee of merchandise to exercise reasonable diligence in ascertaining its grade and condition and to reject it promptly if it proves to be unmerchantable.

2. Upon an examination of the facts, including previous correspondence, in an action upon an accepted draft drawn for "value received in merchandise" and attached to a bill of lading where the consignee could only obtain the goods by acceptance of the draft, *held*, that a letter of the vendee dated seventy days after receipt of the goods, stating, "I hold the fifty (50) cases of dried mushrooms at your disposal against remittance of Francs 4,759.21 as per statement enclosed. You may sue me and I will easily prove the correctness of my claims," was not such a rejection of the merchandise as to constitute a defense to the vendee.

*Ferguson* v. *Netter*, 141 App. Div. 274, reversed.

(Argued February 22, 1912; decided March 5, 1912.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered December 2, 1910, reversing a judgment in favor of plaintiff entered upon a verdict directed by the court and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Maurice Leon* for appellant. Upon the defendant's own proof he had accepted the draft unconditionally, had taken possession of the shipping documents and withdrawn the goods without asking for an opportunity to examine them, and never validly rejected them after examination; hence his liability was conclusively established by his own proof. (*Adams* v. *Worldley*, 1 M. & W. 374; *Besant* v. *Gross*, 10 C. B. 895; *Hoare* v. *Graham*, 3 Campb. 57; *Haines* v. *Nance*, 52 Ill. App. 406; *Heaverin* v. *Donnell*, 45 Am. Dec. 302; *Kervan* v. *Townsend*, 25 App. Div. 256; *Higgins* v. *Ridgeway*, 53 N. Y. 130; *Dwight* v. *Badgley*, 60 Hun, 144; *Mills* v. *Hallock*, 2 Edw. Ch. 652; *Gallup* v. *Lederer*, 1 Hun, 282; *Vail* v. *Rice*, 5 N. Y. 155; *Rodgers* v. *Phillips*, 40 N. Y. 519.) A verdict was properly directed. (*Tradesmen's Nat. Bank* v. *Curtis*, 167 N. Y. 194; *Gillespie* v. *Torrance*, 25 N. Y. 306; *John* v. *Titus*, 2 Hill, 606.)

*David Bernstein* and *I. Maurice Wormser* for respondent. The trial court erred in directing a verdict in plaintiff's favor, since the case presented a clean-cut issue of fact for submission to the jury. (*Waeber* v. *Talbot*, 167 N. Y. 48; *Pierson* v. *Crooks*, 115 N. Y. 539; *Higgins* v. *Eagleton*, 155 N. Y. 466; *Rehberg* v. *Mayor, etc.*, 91 N. Y. 137; *Weil* v. *D. & C. R. R. Co.*, 119 N. Y. 152; *Ladd* v. *Ætna Ins. Co.*, 147 N. Y. 478; *Halperin* v. *Schachne*, 27 Misc. Rep. 195.) It is quite clear that defendant rejected the merchandise, and, in any event, the issues were for a jury, and not the trial court, to pass upon. (24 Am. &

Eng. Ency. of Law [2d ed.], 1088; *Norton* v. *Dreyfuss,* 106 N. Y. 90; Story on Sales [4th ed.], § 405; Burdick on Sales [2d ed.], 133; Williston on Sales, § 96.)

WERNER, J. The action is upon an accepted draft, which was assigned after maturity by the drawer to the plaintiff. The defense is failure of consideration, and the present defendant is the executor of the acceptor of the draft, the latter having died after the action had proceeded to judgment and an appeal had been taken to the Appellate Division.

The parties to the transaction which culminated in this litigation were Henry Vialars, the drawer of the draft, and Charles S. Netter, the acceptor thereof. For convenience and brevity we shall refer to them by their surnames. Vialars is a packer and shipper of dried mushrooms at Villafranche-de-Rouergue, France, and the defendant Netter was an importer and dealer in the city of New York. The record indicates that these men had dealt with each other for some time prior to 1907. In November of that year Netter ordered from Vialars fifty cases of dried mushrooms of choice quality. The order was in the form of a cipher cablegram which was later confirmed by letter. The details of the early correspondence between them are of no present importance, since there was ample evidence to confirm Netter's contention that the mushrooms were to be of choice quality, thoroughly dried and well conserved. The goods were shipped, and on December 30th, 1907, Vialars drew a draft upon Netter payable March 15th, 1908, for " Value received in merchandise," which was attached to the bill of lading and forwarded to New York. On the 28th day of January, 1908, Netter accepted the draft without qualification. The goods arrived at some time between January 24th and 27th. It appears that Netter could not have obtained possession of the bill of lading without accepting the draft, and without the bill of lading he

could not have obtained a clearance of the goods at the custom house. After Netter had received the mushrooms, which were packed in sealed tin cans of one dozen tins to each of the fifty boxes, he opened one or more tins in each case and found them wet, black and mouldy. Here again it is unnecessary to dwell upon the details of the evidence, for it was clearly sufficient to warrant a finding that the mushrooms were not merchantable. Netter claims to have rejected them and Vialars challenges this assertion. As the case turns upon this point, we must now examine with particularity the further correspondence of the parties.

The mushrooms had arrived not later than January 28th, 1908, for the import duty was paid on that day. Ten days later, and under date of February 9th, Netter wrote to Vialars: "I confirm the receipt of your favor January 23rd, Mushrooms. I am compelled to reserve the final acceptance of your last shipment of 50 boxes as I am receiving continually claims. The merchandise is sent back to me time after time." This letter clearly indicates that Netter did not reject the goods, but was reserving his final acceptance in view of complaints which he was receiving from his customers against goods previously sent to him by Vialars. Another week passed when, on February 14th, Netter wrote to Vialars confirming some correspondence concerning walnuts, and in that letter Netter said: "Mushrooms: — The claims multiply, I don't know any more where I am at." This second letter, like the first, clearly referred to the complaints which Netter had been receiving from his customers as to mushrooms sold by him out of previous shipments by Vialars.

After another interval of fifteen days Netter again wrote to Vialars under date of February 29th, saying: "Mushrooms: Bad news continues in regard to the quality. I don't know any more what to do. If I send you a cable with the word *Banque* you will be compelled to notify your bank that they cable to their correspondent in

New York that they shall not present the draft, and if I make up my mind to honor that draft it will be with the understanding that I pay at your risk, that you will guarantee me against all loss that may result from the sale of this article.    On receipt of this letter please cable the word 'Accord' as confirmation that you accept this proposition."    It is again to be noted that in this letter of February 29th Netter's complaint as to quality of mushrooms obviously referred to previous shipments, and that his suggestion regarding a qualified payment of the draft was not based on any definite refusal to retain the last shipment of fifty cases upon which the draft in suit was drawn and accepted.

Thirteen days later Netter again wrote Vialars as follows: "Being without your cable as per my letter dated Feb'y. 29th, I cabled you last night the word '*Banque*' and I received your cable of this date reading 'Impossible pay writing.'    I answered you the word 'Refuse.'    Considering the quality of the goods I cannot burden myself with this lot unless you are willing to leave it with me on consignment, and I will sell them the best I can.    Ever since the month of December I have written you that your goods are returned to me from all sides and I have also written you not to ship these fifty (50) cases without special advice on my part, but you have ignored my instructions and shipped them anyhow.    I regret the incident but it is your fault.    I am sufficiently burdened with the first lots for which I have paid your drafts and the goods continue to come back on account of bad quality.    I cannot establish the loss until I have them finally liquidated."    In this letter, as in those which preceded it, Netter dwells with strong emphasis on the poor quality of the goods in previous shipments with reference to which he was still receiving complaints and cancellations of sales, but he makes no unequivocal assertion as to the quality of the last shipment.    He says, "Considering the quality of the goods, I cannot burden myself with *this*

*lot* unless you are willing to leave it with me on consignment." That Netter was still complaining more particularly of the quality of previous shipments is shown by his reference to the goods which were being returned and the complaints which were continuously coming to him, no less than by the fact that he expressed his willingness to keep the goods on consignment. If he had then thought that the last goods were unmerchantable, he would hardly have made such an offer. Be that as it may, the one conspicuous fact in the correspondence is that after a lapse of forty-five days following the acceptance of the draft Netter had not unqualifiedly refused to accept the last fifty cases of mushrooms.

After another twenty days Netter writes to Vialars, "I have nothing to add to my letter of March 13th except that I have sufficient proofs for my well founded claims and if you choose to sue me I am ready for a defense." Even this letter leaves the reader in some doubt as to what the writer meant by his "well founded claims." If that phrase is construed as referring to the trouble with previous shipments of mushrooms, it is quite consistent with Netter's earlier letters, but it is not apparent that it has any legal bearing upon the question whether he was in fact rejecting the last shipment.

All doubt upon the subject is set at rest, however, by Netter's last letter under date of April 8th, in which he wrote: "I hold the fifty (50) cases of dried mushrooms at your disposal against remittance of Francs 4,759.21 as per statement enclosed. You may sue me and I will easily prove the correctness of my claims."

The recapitulation of a few facts will serve to disclose our views as to the insufficiency of the defense upon the present record. There was no express warranty by Vialars that the goods were to be of a certain quality, but there was, of course, an implied warranty that they would be merchantable. An express warranty survives acceptance, but an implied warranty does not. It was,

therefore, Netter's duty to exercise reasonable diligence in ascertaining the grade and condition of the mushrooms and to reject them promptly if they proved to be unmerchantable. Seventy days elapsed between Netter's receipt of the goods and the date of his final letter. The record shows quite conclusively that during this period Netter was more concerned with his troubles over Vialars' previous shipments than he was over the quality of the last shipment. Even if it were possible to regard his final decision as a rejection of the goods, we should be under the necessity of holding as matter of law that it had been unreasonably delayed. But the truth is that he never rejected the goods at all, and, therefore, it is of no consequence whether the warranty as to quality was express or implied. After more than two months of correspondence devoted to finding fault with the previous shipments, Netter finally closed the correspondence by advising Vialars that he would hold the last shipment to reimburse him for losses which he claimed to have sustained on the previous shipments. This was utterly inconsistent with Netter's present claim that he rejected the goods, and for that reason we think his defense must fail. If his purpose was to reject the last shipment he should have said so. Instead of doing this he endeavored to hold them. We think the trial court properly directed a verdict for the plaintiff, and that the judgment entered upon that direction should have been affirmed, instead of being reversed, by the Appellate Division.

The order of the Appellate Division should be reversed and the judgment of the trial court affirmed, with costs to the appellant in both courts.

CULLEN, Ch. J., GRAY, HAIGHT, VANN, HISCOCK and COLLIN, JJ., concur.

Order reversed, etc.